SIMON B. FIFIELD *vs.* MAINE CENTRAL RAILROAD COMPANY.

*Conversion. Delivery. Temporary track, not owned by the Company, held personalty. Trover.*

Persons, who contracted to build a railroad, were the owners of certain rails and sleepers, consisting of a side track connected with the main track, used for the purpose of conveying materials upon the road bed during construction, and when the road was delivered to the Railroad Company, at the request of the Company and for their accommodation and use, the contractors consented that the track should remain a while, to be returned to the contractors anywhere upon the line of the road whenever called for; and while in that situation the rails and sleepers were seized and sold upon executions as the personal property of the contractors. *Held*, that they were not a part of the realty, but personal chattels, liable to be so seized and sold.

The officer could give and the purchaser receive, a delivery, without taking any other possession of the rails and sleepers than such as could be had without disturbing their situation as a track.

The railroad corporation would not be liable to an action for conversion of the rails by a reasonable use of them while they had no notice that the ownership of them had changed; nor by a mere non-compliance with a written demand served upon its president at a place other than where the rails were, the corporation making no objection or resistance to the plaintiff's taking possession of them.

ON EXCEPTIONS.

TROVER for the conversion of a specified number of bars of railroad iron of various lengths, valued at $2,500, alleged to have been taken July 17, 1871, in Brooks.

Wilson, Tennant & Co. were contractors for building the Belfast and Moosehead Lake Railroad, furnishing the iron themselves. November 1, 1870, they delivered the road to the company. The iron claimed in this action was then laid down in two side tracks, fastened to the main track by frogs, and previously used by the contractors in the transportation of gravel, being moved from place to place, as occasion required; and on that day last named, they were placed in the gravel pit for a temporary purpose.

The contractors did not intend to deliver the iron in these side

tracks to the company, and had commenced to remove another side track owned by them on the line of the railroad, preparatory to removing the side tracks in controversy, and have them disconnected from the line of the road at the time of delivery, but on request of the president of the road, as a matter of accommodation, they consented to allow these two side tracks to remain there temporarily, on his promise that the rails in them should be delivered to them, free of expense, at any point on said railroad which they might designate. The B. & M. L. R. R. Co. leased their road, on the twenty-eighth day of April, 1871, to the Me. Cent. R. R. Co., and possession was given on the tenth day of May, 1871. Prior to this lease, the B. & M. L. R. R. Co. had used these side tracks, as occasion required, and subsequently thereto, the Maine Central R. R. Company used them in like manner.

Upon the nineteenth day of November, 1870, three writs were sued out of this court for Waldo County, in favor of the plaintiff and others, against Wilson, Tennant & Co., and attachments made of about two hundred and sixty bars of railroad iron, lying along the railroad, and near the west end of the Belfast lower bridge, in Belfast. Judgment was obtained in all these cases at the ensuing April term, and executions issued May 3, 1871, upon which the iron in dispute was sold to the plaintiff. It is uncertain whether these side tracks were connected with, or disconnected from, the main track at the time of these attachments; but it is admitted, that on the first day of December, 1870, they were disconnected by the B. & M. L. R. R. Co., for purposes of their own, and connected again prior to their lease to the defendants, and have ever since so remained.

The officer selling on execution made delivery by standing upon the rails and taking hold of them, and the plaintiff, also standing upon them, accepted them. At that time the rails were spiked down and fastened to the sleepers, and connected with the main track so they could not then have been removed, for lack of proper tools, there being no opposition to their removal.

A written demand was made upon the president of the defendant

Fifield *v.* Me. Cent. R. R. Co.

company by Mr. Fifield, July 7, 1871, upon which no action was taken by the defendants. The judge ruled that the rails when attached and seized, were the attachable personal property of Wilson, Tennant & Co., and that a valid title thereto passed to the plaintiff by the sale upon execution, and ordered judgment in his favor; to which the defendants excepted, the cause having been submitted to the presiding judge with leave to except.

*J. S. Rowe,* for the defendants.

The railroad track, and the rails spiked to it, are fixtures. *Strickland v. Parker,* 54 Maine, 263-7; *Farmers' Loan & Trust Co. v. Hendrickson,* 25 Barb. (N. Y.) 488.

If personalty, there was no attachment, because no actual taking and retention of the rails by the officer. *Lane v. Dalton,* 5 Mass., 156.

No attachment of any iron except that in Belfast, since there was no certificate filed in the office of the town clerk of Brooks. R. S., c. 81, § 24.

*J. F. Godfrey,* for the plaintiff.

To hold these rails, defendants must show that they were connected with the main track, by Wilson, Tennant & Co., with the intent of making them, permanently, a part of the same. *Parsons v. Copeland,* 38 Maine, 546; *Strickland v. Parker,* 54 Maine, 263.

All the possession and delivery of which the property was, from its nature and situation, susceptible, was taken and made. *Gilbreth v. Vining,* 39 Maine, 496. At all events, sufficient was done to pass the title as against these defendants holding tortiously. *Webber v. Davis,* 44 Maine, 147.

Non-compliance with the proper demand for this property made July 7, 1871, authorizes the maintenance of this action.

PETERS, J. The defendants contend that the rails in controversy were a fixture, or part of a fixture, and not attachable as personal property.

In *Hunt v. Bay State Iron Co.*, 97 Mass., 282, it was decided, that rails delivered under an agreement that they should be laid down on a specific part of a railroad, and continue the property of the vendors until a specific price was paid for them, remained the personal property of the vendors until payment, and were not, when laid, so inseparably annexed to and incorporated with the realty that they could not be removed for non-payment of the price. The same question was decided in the same way in *Pierce v. Emery*, 32 N. H., 484, and in *Haven v. Emery*, 33 N. H., 66.

In these cases it is said that, without notice, subsequent *bona fide* purchasers of title to the road would not be affected by such private agreement, changing the natural and legal character of the road from real to personal, but would have a right to suppose that they acquired all the incidents and appurtenances, which, by the general rules of law, would result from such a purchase. How far this qualification of the general principle, stated in these cases, would obtain as a rule of construction in this State, may be an important question not now necessary to decide. The case of *Russell v. Richards*, 10 Maine, 429, and subsequent cases, establish the doctrine here, that *bona fide* purchasers, who even without notice, acquire the title to land, are not entitled to claim such structures as a house, store, or mill standing on the land at the time of purchase, if such buildings were, at such time, the property of a third person, although from their situation upon the land, they had the appearance of being a part of the realty. The case of *Russell v. Richards* does not accord with the adjudged cases in Massachusetts and New Hampshire in this respect, and the general course of decision is rather opposed to it. See enumeration of cases compared in the extensive notes to the case of *Elwes v. Mawe*, 2 Smith's Lead. Cas., 99.

We arrive at the conclusion, that the rails in controversy, were attachable as personal property, upon the ground, that they in no respect partook of the character or quality of fixtures, but that they were merely personal chattels, belonging to the original party sued ; and therefore were no part of the iron laid on "the track"

Fifield *v.* Me. Cent. R. R. Co.

of the one corporation leased to the other. Thus they were the acknowledged property of Wilson, Tennant & Co., from whom the title had not, at least, voluntarily passed. No one else claimed them; they were merely loaned to the railroad corporation, returnable whenever called for; were laid entirely for temporary and not permanent purposes; had before that time been removed from place to place, and were designed for or altogether used in, no particular locality; were no part of the road track proper, nor a necessary incident or appendage of it. Such tracks constitute a part of the means used in constructing a road, but are not a part of the structure. They are usually of hasty and rude construction, and as often as otherwise, passing over lands outside the limits of the corporation prescribed by charter. It makes no dif ference that the two tracks were connected by frog and switch, certainly further than the immediately connecting rail was concerned, as the others could be removed without in the least degree disturbing the uses of the road; nor, that the rails were laid upon sleepers, as these too were seized and sold with the rails. It might as well be contended that the scaffolding, ladders and appliances, used in constructing, which a mechanic temporarily leaves about a newly finished house, becomes the property of the householder, so as to pass as a fixture upon his conveyance of the real estate.

As there was no intervening change of title, it is immaterial whether the attachment was valid or not, if the rails were legally sold upon execution. The legality of this proceeding is contested by the defendants, upon the alleged ground that the officer never obtained an actual custody and possession of them. It may be, as contended by the plaintiff, that no actual delivery was necessary to establish title as between the officer and him; but the objection urged is rather that by such seizure and possession only as were taken, the officer had no rails to deliver, and could give no title. It is not pretended but that if the rails had been taken up and removed, a sufficient seizure would have been made of them; and, what essential difference would there be whether the rails,

when sold were arranged upon sleepers or were differently situated? They were as much within the control and possession of the officer in the one condition as the other. There can be no doubt that an attachment of such property, without removal, would be valid and effectual, if a return to the town clerk's office was made instead of keeping possession and custody. R. S., c. 81, § 24. *Nichols v. Patten*, 18 Maine, 231. It is not perceived why property in a condition to be attached, could not in such condition also as well be sold. An officer who sells a house or a mill as personal property, makes no removal of the building, but merely surrenders a possession of it upon the premises where it stands. The purchaser afterwards may keep such possession as he is entitled to. We deem the steps taken in this case sufficient and effectual to pass to the plaintiff a title to the rails. *Hemmenway v. Wheeler*, 14 Pick., 408; *Doty v. Gorham*, 5 Pick., 487; *Polley v. Lenox Iron Works*, 4 Allen, 329; *Vining v. Gilbreth*, 39 Maine, 496.

Has there been a conversion of the rails by the defendants? To constitute it there must have been either a wrongful taking, or wrongful detainer, or an illegal using, or a misusing, or an illegal assumption of ownership. *Polley v. Lenox Iron Works*, 2 Allen, 184. The defendants did not wrongfully take them, because it was by consent. Have not claimed to own them. Have not abused, nor is there any evidence that they have wrongfully used them; that they were used since the written demand was served, does not appear; and there is nothing in the case to show that up to that time, the defendants had any notice whatever that the title to the rails had passed from their bailors. Using the rails subsequently to the sale, could not be regarded as a wrongful act of the corporation as long as they had no notice that the title to the rails had changed. Where the owner of chattels in the possession of another as bailee to such owner, makes a sale of them to a third person without notice to the bailee and without disturbing his possession in any way, the title of the vendee is necessarily affected by and subject to the possession in the bailee, and will so remain

Fifield v. Me. Cent. R. R. Co.

until by notice or in some other way the right of the bailee to continue such possession is terminated. Otherwise the undertakings of agents, trustees, bailees, carriers and the like would be exposed to hazardous and unreasonable consequences. The defendants as bailees would undoubtedly be liable to the plaintiff for the value of the use of the rails since he acquired title by the sale upon execution, but not to the extent of their value for a conversion.

Nor have the defendants wrongfully detained the rails. They were under no obligation to make an actual delivery to the plaintiff anywhere, and they have not objected to or resisted his taking them. It is said in *Dame v. Dame*, 38 N. H., 459, that a refusal to assent to the removal of a building, owned by one person, from the land of another, would not constitute conversion if no resistance was made. Here there was no refusal even, but only a non-compliance with a written demand for a delivery served upon an officer of the defendant corporation when in Bangor, while the property demanded was in Brooks, without any statement as to when or where the plaintiff desired to receive the property demanded.

There are cases in which it has been decided that a written demand left at a house or place of business, or sent through the mail and received, may be sufficient; but it is where a person is in possession under some contract or permission, and under such circumstances that a duty is imposed upon him to make a re-delivery; as, for instance, where one person has borrowed of another and has neglected to return. This case differs from the class of cases where such a demand has been held sufficient. *White v. Demary*, 2 N. H., 546; *Pattee v. Gilmore*, 18 N. H., 460; *Durgin v. Gage*, 40 N. H., 302.

The plaintiff should have undertaken to take the rails, or have forbidden the defendants to use them; or at least have notified them of a change of ownership; and a resistance to such taking, or using the property after such notice would have been evidence of

conversion; but upon the case as presented it is not established; and, on this account the result must be,

*Exceptions sustained.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and BARROWS, JJ., concurred.